IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                          :
RHONDA ABBOTT,            :    HONORABLE JEROME B. SIMANDLE
                          :
           Plaintiff,     :    Civil No. 10-1901 (JBS/AMD)
                          :
     v.                   :
                          :         OPINION
TACCONELLI'S PIZZERIA, LLC et :
al.,                      :
                          :
           Defendants.    :
                          :
```

APPEARANCES:

William B. Hildebrand, Esq.
LAW OFFICES OF WILLIAM B. HILDEBRAND, LLC
1040 Kings Highway North
Suite 601
Cherry Hill, NJ 08034
     Attorney for Plaintiff Rhonda Abbott

John T. Dooley, Esq.
LAW OFFICES OF JOHN T. DOOLEY, LLC
The Dooley Building
5434 King Avenue at Route 38 East
Suite 202
Pennsauken, NJ 08109-1197
     Attorney for Defendants Tacconelli's Pizzeria, LLC, and
     Vincent Tacconelli


**SIMANDLE**, Chief Judge:

     The matter before the Court is the motion of Defendants

Tacconelli's Pizzeria, LLC and Vincent Tacconelli to enforce

settlement [Docket Item 53.] In this case, two Plaintiffs, Rhonda

Abbott and Gregory Lasky, alleged that they were denied service

and were unable to gain access, respectively, to Tacconelli's

Pizzeria in Maple Shade, New Jersey, and brought suit under state

and federal laws protecting individuals with disabilities. After discovery and negotiations, the case was reported settled. Plaintiff Abbott thereafter changed attorneys and now asserts that the settlement cannot be enforced because her previous attorney, Anthony Brady, Jr., Esq., did not have authority to settle the case, and the settlement agreement itself is unenforceable because essential terms are missing. Defendants move to enforce the settlement agreement.[1] The court convened a hearing upon the motion to enforce settlement on December 14, 2012, and received post-hearing submissions.

The principal issue presented is whether Plaintiff Abbott's former attorney, in agreeing to a compromise settlement, thereby bound Ms. Abbott because he had actual or apparent authority to do so. Because the Court finds that Mr. Brady had actual authority from Rhonda Abbott to settle the case, and no essential terms are missing from the agreement, the Court will grant Defendants' motion to enforce settlement.

## I. Introduction

Rhonda Abbott ("Plaintiff"), who is hearing impaired and disabled and uses a service dog, alleges she was denied service at Tacconnelli's Pizzeria because of the presence of her service

---

[1] Plaintiff Gregory Lasky did not move to vacate his settlement and does not seek to challenge the settlement now. Under the terms of the settlement, Lasky received equitable relief to remove barriers to access the premises and received no monetary damages.

dog. [Am. Compl. ¶¶ 1, 7.] Gregory Lasky, who is a paraplegic and uses a wheelchair and service dog, is a "tester" who visits public accommodations to test if there are barriers to access for the disabled; he joined the suit as a plaintiff after he went to the pizzeria and was unable to enter because the snow piled on the curb allegedly rendered it impossible for him to access the building. [Id. ¶ 2, 13.]

Plaintiffs sued the pizzeria and Vincent Tacconelli, the owner and manager, and Lasky also sued Best Properties, LLC, the landlord of the strip mall in which the pizzeria was located,[2] for violations of the New Jersey Law Against Discrimination and the federal Americans with Disabilities Act in state court, and the action was removed to federal court. [Docket Item 1.] After Defendants moved to dismiss, see Abbott v. Tacconelli's Pizzeria, LLC, No. 10-1901, 2010 WL 3359533, at *7 (D.N.J. Aug. 24, 2010), Plaintiffs filed a final Amended Complaint [Docket Item 23].

The parties worked toward a settlement.[3] On January 28,

_____

[2] Best Properties in turn filed a claim against Cole ML Maple Shade, NJ LLC, which owns the parking lot and other common areas that service the Best Properties mall. [Docket Item 31.]

[3] Facts about the settlement process, recounted infra, came to the attention of the Court and defense counsel only recently, after briefing on this matter was complete. Upon seeing Plaintiff's opposition to the present motion, in which Plaintiff asserted that Mr. Brady did not have authority to settle the matter, Brady submitted sealed documents to the Court for in camera review, with a copy to Plaintiff's present counsel, Mr. Hildebrand. Mr. Brady acted properly in making an in camera submission in satisfaction of his duty of candor to the tribunal,

2012, Mr. Brady and his wife, Albena Shutenko, who assisted Brady

_____

as he rightly feared that his former client was making material misrepresentations and omissions to the Court. Mr. Brady claimed the materials show that he had actual authority to settle the case, but he was aware that Plaintiff's attorney-client privilege potentially protected some of the communications described or contained in the documents. The Court did not inspect the documents before oral argument but solicited the views of Plaintiff's new counsel and of defense counsel prior to the hearing. [Docket Item 63.]

At oral argument, all counsel expressly agreed, and the Court found, that Plaintiff had waived the privilege as to her communications with Mr. Brady about settlement because she voluntarily placed those communications in dispute and the communications are essential to deciding the present motion.

New Jersey case law clearly establishes that "by voluntarily placing in issue what he may have previously stated to his lawyer, or what his lawyer may have stated to him, a client may forfeit the protections of attorney-client confidentiality." In re Peter, Susan, & Steven Linder Irrevocable Trust, A-0634-10T1, 2011 WL 721967, at *6 (N.J. Super. Ct. App. Div. Mar. 3, 2011). See also Blitz v. 970 Realty Assocs., 557 A.2d 1386, 1390 (N.J. Super. Ct. App. Div. 1989) ("when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege"); Weingarten v. Weingarten, 560 A.2d 1243, 1246-47 (N.J. Super. Ct. App. Div. 1989) (stating that the attorney-client privilege is waived when the information sought is "'highly germane to a critical issue raised by the party seeking to invoke' the privilege," quoting United Jersey Bank v. Wolosoff, 483 A.2d 821 (N.J. Super. Ct. App. Div. 1984)).

Normally, the Court would file under seal its Opinion containing a discussion of potentially confidential matters, but because Plaintiff, through her attorney, explicitly agreed that the attorney-client privilege has been waived as to matters concerning Mr. Brady's authority and the terms of settlement, the Court sees no need to do so. The Court will cite only those portions of the documents necessary to decide the present motion. The documents have been placed on the docket under seal at Docket Item 66.

Following oral argument, Mr. Hildebrand submitted a second set of documents revealing still more details about the settlement process and its aftermath. Mr. Hildebrand provided a copy of the materials to opposing counsel and did not request that the documents be placed under seal. The documents were entered on the electronic docket at Docket Item 68.

4

in his legal office, met with Plaintiff Abbott. Plaintiff told
Mr. Brady that she would accept a settlement sum of $1,000.
[Brady Certification ¶¶ 6-7; Shutenko Certification ¶¶ 12-13.]
Plaintiff was not interested in injunctive relief for this case,
but rather wanted Mr. Brady to focus on other litigation in which
he was representing her. [Brady Certification ¶¶ 7, 11.] Mr.
Brady explained that her chances of obtaining injunctive relief
in this case were poor because she might not have standing to do
so, and that her other case might be affected negatively by
prolonged litigation in the Tacconelli matter. [Brady
Certification ¶¶ 6-7; Shutenko Certification ¶ 10.] During this
conversation and on other occasions, Mr. Brady explained that co-
plaintiff Lasky was seeking only injunctive relief, not damages,
and Lasky's case for injunctive relief was stronger than
Plaintiff's, since there had been a barrier to his access. [Brady
Certification ¶¶ 7, 18; Shutenko Certification ¶ 12.]

Between February 26 and March 2, 2012, Ms. Abbott sent Mr.
Brady a series of e-mails requesting additional time to talk
about the settlement conference. [Docket Item 68-2, Ex. B.] Mr.
Brady did not meet with Ms. Abbott again before attending the
settlement conference, which occurred on or shortly before
February 28, 2012.

Mr. Brady negotiated a settlement with Defendants that
provided injunctive relief to respond to Lasky's claims and

$3,000 total in payment. [Def. Ex. G.] Tacconelli, Best Properties, and Cole ML Maple Shade NJ, LLC each were to pay $1,000 "to Plaintiffs." [Def. Ex. G. § 2.3.] The settlement also called for Plaintiff to sign a confidentiality agreement. [Id. § 6.9.] Mr. Brady wrote a letter to Plaintiff Abbott on February 28, 2012, explaining the terms of the deal. The letter stated in part: "The total settlement was $3,000; $1,500 to you for damages. My attorney fee greatly exceeds this amount but there was a strong possibility for a jury result of no damages. I am pleased with this result. Now we can turn our full attention to [other matters]." [Brady Attach. 2.] A few days later, on March 5, 2012, Plaintiff responded to Mr. Brady via e-mail:

> Over the weekend, I went to my PO Box and then learned that the Tacconelli's Case has been settled. Congratulations, the Pizza Parlor Monkey is now off your back! . . . Judging from your short Settlement Letter, I am assuming that "terms" meant that (Mr.) Tacconelli's admitted "No" Wrongdoing. . . . Re the Settlement, Do I need to Sign any Papers?

[Abbott e-mail to Brady dated Mar. 5, 2012, at Brady Attach. 3] Plaintiff then stated that she was "looking forward" to adding her settlement share to her bank account. [Id.]

On March 13, 2012, Mr. Brady faxed a letter to Magistrate Judge Donio and opposing counsel stating "that the above captioned matter has settled and, therefore, the in person settlement conference scheduled for Wednesday, March 14, 2012 can be cancelled." [Docket Item 53-3.] The same day, Mr. Brady sent a

Stipulation of Dismissal with prejudice to John T. Dooley, Esq., counsel for Defendant Tacconelli and Tacconelli's Pizzeria. [Dooley Certification ¶ 6 (Docket Item 53); Def. Ex. C.] Mr. Brady forwarded a W-9 form dated March 13, 2012, to opposing counsel with e-mailed instructions that "Settlement check to be made out to 'Trust Account of Anthony J. Brady, Jr.'" [Def. Ex. E.]

On March 15, 2012, the Court entered an Order of Dismissal, noting the case had been settled and included a 60-day order to re-open the case if the settlement was not consummated. [Docket Item 42.] The Court retained jurisdiction to the extent necessary to enforce the terms and conditions of any settlement. [Id.]

The parties continued to operate as if settlement had been reached. Defendants relied upon Mr. Brady's authority to settle the case on behalf of his clients. Damien Del Duca, Esq., counsel for Best Properties, circulated a Confidential Settlement and General Release Agreement ("CSA"). [Dooley Certification ¶ 8.] Defendant Tacconelli wrote a settlement check, dated April 30, 2012, for the amount of $1,000, payable to Mr. Brady's trust account. [Def. Ex. F.] That same day, Mr. Dooley forwarded the CSA to Mr. Brady. [Def. Ex. G.] A few days later, Mr. Dooley followed up on the CSA via e-mail: "Anthony: Please have your clients sign the release and forward to me. I have the check from Tacconelli defendants waiting to be sent." [Def. Ex. H.] A week

later, Mr. Dooley sent another e-mail: "Anthony, What's the status of the release? We are coming up on the Court's deadline of 5/15/12. Let me know asap." [Id.]

On May 11, 2012, Mr. Brady sent the Court a letter stating: "The above matter has not been consummated in that Attorney Del Duca's client has not submitted the necessary closing papers at this time. Plaintiffs respectfully request an additional forty-five days for consummation of the settlement agreement. Mr. Del Duca and other issues have arisen." [Docket Item 43.] The Court granted Plaintiffs' request for a 45-day extension on May 14. [Docket Item 45.]

In the meantime, on April 21, 2012, Abbott had learned that Lasky was receiving injunctive relief from the Defendants in the form of an access ramp in front of the Pizzeria.[4] [Docket Item 68-2 Ex. B.] Abbott wrote Mr. Brady a lengthy e-mail rehashing her grievances against Defendants in which she inquired whether she would be receiving injunctive relief as well, in the form of a sign stating that "Service dogs are permitted and welcomed." [Id.] Abbott wrote: "I had always intended to discuss this with you but, you *never* set aside any time for me . . . ." [Id.]

---

[4] Abbott wrote in an April 21, 2012, e-mail to Brady: "Today, I learned for the *first* time that your client *Greg Lasky* is getting a proper access ramp out of the Tacconelli's Deal." [Docket Item 68-2 Ex. B.] The Court is aware of no other mention of an access ramp; the CSA included other forms of injunctive relief, but no access ramp.

8

Abbott, having had an apparent change of heart from March 5 when she congratulated Mr. Brady and accepted the settlement terms, expressed a sudden dissatisfaction with the deal. Brady wrote in an e-mail of the same date, "I am most disappointed . . . . You gave me specific permission to settle the matter as long as you received at least one thousand dollars. You will receive one thousand five hundred dollars. The agreement is very good because the odds of you receiving damages was small." [Id.]

On May 11, 2012, William B. Hildebrand, Esq., wrote a letter to the Court stating that Plaintiff Abbott "requested that I represent her in this case, in place of Mr. Brady." [Docket Item 44.] On June 20, 2012, Mr. Hildebrand, on behalf of Plaintiff Abbott, filed a motion to vacate the Court's dismissal order of March 15, 2012 [Docket Item 47], and the motion to vacate was granted as to Plaintiff Abbott only, to reopen the docket. [Docket Item 48.] The order vacating the dismissal order simply stated that Plaintiff Abbott "report[ed] that settlement has not been consummated as anticipated when the parties reported the matter having been settled in March; and for good cause shown . . . Plaintiff's motion . . . hereby is, GRANTED . . . ." [Docket Item 48.]

Mr. Brady, in response to the motion to vacate, wrote Mr. Hildebrand an e-mail suggesting reallocation of the settlement money, in an apparent effort to save the settlement without

9

"fil[ing] any additional pleadings or attend[ing] any
conferences" with Defendants, who "have acted in good faith."
[Docket Item 68-2 at Ex. A.] Mr. Brady raised the question of
whether Lasky would accept $2,000 of the settlement money. [Id.]
Mr. Hildebrand responded, clarifying that his "motion only seeks
to vacate the dismissal of Ms. Abbott's claims" and "[i]t is not
my intention to disrupt or interfere with any settlements agreed
to by other parties." [Id.]

Judge Donio held a settlement conference on August 9, 2012,
and Mr. Hildebrand took the position that the case had not been
settled on behalf of Plaintiff; Defendants took the position that
the case had been settled. [Dooley Certification ¶¶ 18-19.]
Defendants then filed the present motion to dismiss.[5] [Docket
Item 53.]

## III. Discussion

### A. Arguments

Defendants assert that the parties orally agreed to settle
the case in March 2012, and that Plaintiff, through Mr. Brady,
accepted the negotiated settlement at that time. [Dooley
Certification ¶ 22.] Defendants claim that Brady "represented to
all defense counsel in the case that he had the actual and

---

[5] Because only Plaintiff Lasky sought relief from Best
Properties and the dismissal was not vacated as to him, only
Defendants Tacconelli and Tacconelli's Pizzeria bring the present
motion.

10

apparent authority to negotiate the settlement on behalf of both plaintiffs . . . ." [Id. ¶ 16.] Defendants request that Plaintiff should be compelled to sign the CSA negotiated by Mr. Brady and abide by the terms of the agreement. [Id. ¶ 22.]

In her opposition brief submitted by Mr. Hildebrand, Plaintiff asserts that Mr. Brady did not have authority to settle the case, and she states in an affidavit that "I never authorized my attorney, Anthony Brady, Esquire, to settle this case on the terms set forth in the Confidential Settlement Agreement attached to Defendants' proposed Order. Rather, I advised him that I had a problem with the settlement long before he sent me the proposed Settlement Agreement on May 1, 2012." [Docket Item 57; Abbott Aff. ¶ 3.]

Plaintiff denies that Mr. Brady had actual authority to settle the case and argues that Mr. Brady's words and acts alone are insufficient to establish Mr. Brady's apparent authority, citing Amatuzzo v. Kozmiuk, 703 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1997). [Id. at 7-9.] Plaintiff suggests that, without any evidence of her own words or conduct giving rise to the apparent authority of Mr. Brady, no authority can be established and the settlement cannot be enforced.

Plaintiff also argues that the CSA is not enforceable as a contract because was missing "an essential term": language specifying the allocation of settlement money between Plaintiffs.

[Id. at 5-6.] Plaintiff argues that the uncertainty about allocation of the global $3,000 settlement "creates obvious problems in enforcing this settlement." [Id. at 4.] Plaintiff suggests that the CSA is incomplete for other reasons as well, including (1) the agreement was missing a provision about the "barrier removal work" that Defendant Best Properties was supposed to perform, (2) the agreement contained "extensive equitable provisions favoring Lasky, but none for Abbott," and (3) the confidentiality provisions are one-sided, not mutual, as Mr. Brady requested. [Id. at 3-4.] Plaintiff concludes that the settlement agreement cannot be enforced, because enforcement is only appropriate "where the terms of the agreement are clear and definite, and capable of enforcement, which is not the case here." [Id. at 5.] At oral argument, Plaintiff's counsel further suggested that Plaintiff did not understand the terms of the agreement.

Plaintiff also asserts that enforcement of the settlement would violate Rule 1.8(g) of the New Jersey Rules of Professional Conduct ("RPC"), which prohibits lawyers from making an aggregate settlement on behalf of multiple plaintiffs without receiving informed consent from each plaintiff. [Id. at 4.]

Finally, Plaintiff asserts that she should not be forced to sign the CSA, which "contains a one-sided confidentiality provision that is now virtually worthless, because the alleged

settlement terms are now accessible to anyone with a PACER account." [Id. at 7.]

Defendants reply that the possible violation of the RPC "is an issue between Mr. Brady and his clients" and does not act to void the settlement. [Def. R. Br. at 3.] Defendants respond similarly to the absence of language allocating the settlement money: "how the total settlement amount of $3,000.00 was to be divided . . . is simply an issue between Mr. Brady and his clients." [Id.]

**B. Analysis**

**i. Enforcing settlements under New Jersey law**

In general, an enforceable contract is formed where there is offer and acceptance and terms are sufficiently definite that performance to be rendered by each party can be ascertained with reasonable certainty. Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284 (N.J. 1992). If parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract. Id. However, where the parties do not agree on an essential term, courts generally hold the agreement is unenforceable. Id. See also United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997) (citing Weichert). Determining whether a term is essential "depends on the agreement and its context and also on the subsequent conduct of the parties . . . ." JM Agency, Inc. v. NAS Fin. Servs., Inc., No. L-1541-05,

13

2007 WL 2215393, at *3 (N.J. Super. Ct. App. Div. Aug. 3, 2007) (citing Restatement (Second) of Contracts § 131, cmt. g (1981)).

An attorney may settle a lawsuit for a client based on actual authority, express or implied, or apparent authority. See Amatuzzo, 703 A.2d at 12 (holding that negotiations conducted by an attorney are binding on the client if the client "has expressly authorized the settlement or the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement"). Actual authority is implied when an agent "may reasonably infer the principal desires him to do" as the agent does "in light of the principal's manifestations and facts as he knows or should know them when he acts." Lampley v. Davis Mach. Corp., 530 A.2d 1254, 1258 (N.J. Super. Ct. App. Div. 1987).

The party seeking to enforce the settlement bears the burden of proving a valid settlement existed under contract law. Browne v. Poly-Chem Sys., Inc., No. L-2864-06, 2011 WL 9106, at *3 (N.J. Super. Ct. App. Div. July 1, 2010) (citing Amatuzzo, 703 A.2d at 11-12). Once that burden has been met, the party seeking to set aside the settlement has the burden of proving "extraordinary circumstances to vitiate the agreement" by "clear and convincing evidence." Casagrande v. Casagrande, No. C-268-08, 2012 WL 5990122, at *5 (N.J. Super. Ct. App. Div. Dec. 3, 2012) (quoting

14

Jennings v. Reed, 885 A.2d 482, 488 (N.J. Super. Ct. App. Div. 2005) and citing Smith v. Fireworks by Girone, Inc., 881 A.2d 1243, 1254 (N.J. Super. Ct. App. Div. 2005), cert. denied, 186 N.J. 243 (2006)).

**ii. Actual authority**

The facts show that Mr. Brady had actual authority to settle this matter as he did. Plaintiff Abbott told her attorney that she would accept a minimum of $1,000 in damages, and Mr. Brady negotiated to get her $1,500. Plaintiff's own e-mail manifests her approval of this amount, and there is no basis for the suggestion that Plaintiff did not understand the terms of the settlement.

Abbott's March 5 e-mail does not inquire about Mr. Brady's silence as to injunctive relief favoring her. In fact, Mr. Brady never promised Plaintiff she would receive injunctive relief. Rather, statements by Brady and Shutenko show that Brady explained to Plaintiff that her case for injunctive relief was tenuous and thus he would not pursue injunctive relief as part of a settlement. Only after learning that Lasky received injunctive relief pertaining to Lasky's physical barrier problem did Abbott insist she always demanded such relief as part of a settlement. Abbott acknowledges, in an April 21 e-mail, that she never communicated to Brady that injunctive relief was essential to any settlement: "I had always intended to discuss this with you . . .

." [Docket Item 68-2 Ex. B.] Abbott implies in the e-mail that, had Brady met with Abbott again prior to settling the case, she would have demanded injunctive relief; however, Abbott's own e-mail on March 5 approving the settlement terms supports the conclusion that injunctive relief was not paramount in her mind before April 21, more than six weeks after she approved the cash-only settlement of $1,500. Abbott's prior meetings with Brady left him with the impression she sought only monetary damages. Therefore, at the very least, Brady enjoyed implied actual authority when he negotiated the settlement, because he reasonably inferred that Abbott sought only money damages and would accept at least $1,000 based on Abbott's "manifestations and facts as he kn[ew] . . . them when he act[ed]." Lampley, 530 A.2d at 1258.

In hindsight, Plaintiff may now regret the settlement terms, but that is no basis for the Court to set aside an agreement that was negotiated in good faith and to which Abbott expressly assented. The settling Defendants clearly relied upon Brady's authority to negotiate and agree to the settlement. "Absent a demonstration that a settlement was procured by fraud or some similarly compelling reason," New Jersey courts have long been reluctant to set aside settlements. Brundage v. Estate of Carambio, 951 A.2d 947, 968 (N.J. 2008). Here, Mr. Brady enjoyed implied, if not express, actual authority to settle Abbott's

16

claims for $1,500.

### iii. Essential terms

Plaintiff Abbott argues that the settlement agreement is unenforceable because it is missing essential terms allocating the damages between Abbott and Lasky and lacks a provision for injunctive relief in favor of Abbott.

Plaintiff here attempts to create uncertainty where there is none. There is no confusion about the allocation of settlement money between Abbott and Lasky. Mr. Brady expressly told Plaintiff that her share would be $1,500 and that Lasky sought no damages, and Plaintiff manifested approval of her share. Mr. Brady's fee, which he reduced for this case, and his reimbursement for costs would be taken from the remainder of the $3,000 settlement amount, <u>i.e.</u>, the other $1,500. Plaintiff even today makes no claim that Brady should not have received $1,500 from this settlement for his fees and costs, given the extended time and efforts he devoted to this case. Nor does Plaintiff argue that she deserved to receive more money from the $3,000 settlement. Plaintiff likewise does not assert that she never told Brady that she wanted $1,000 and accepted $1,500. Plaintiff's settlement exceeds what she asked for and she approved the terms in her e-mail.

Plaintiff wishes to make a material issue of Mr. Brady's later inquiry to Mr. Hildebrand whether Lasky would accept

$2,000. But Mr. Brady did not even float that question until after the motion to vacate had been filed. Brady's e-mail appears to the Court to be a last-ditch effort to save a settlement that he negotiated and that was falling apart. In any event, the terms that Abbott approved in March were certain as to what she would receive, which clearly exceeded the amount she had authorized Brady to negotiate and accept. Defendants seek to enforce the terms that Plaintiff expressly approved, not any other amount Brady articulated when the settlement appeared to be in jeopardy.

On the issue of injunctive relief, as previously discussed, Mr. Brady explained to her the weaknesses of her case and the potential negative consequences of pushing for injunctive relief as part of the settlement. Mr. Brady never promised Plaintiff she would receive injunctive relief, and Plaintiff's e-mail manifesting assent to the settlement terms made no mention of Brady's silence on the issue. That Plaintiff now asserts she always insisted on receiving injunctive relief does not make it so, nor does it render the approved settlement agreement unenforceable, because Brady had at least implied actual authority to settle the matter when he did.

Plaintiff also appears to argue that the settlement agreement is unenforceable because the confidentiality provisions are one-sided, not mutual. [See Def. Ex. G § 6.9.] The provision indeed binds only Plaintiffs to confidentiality. But such an

18

arrangement is the prerogative of the parties. There is no
evidence that Plaintiff demanded a mutual confidentiality
agreement, or, even if she did, that such a provision would have
been determinative of her acceptance of the settlement, much less
an essential term. There is no allegation that Defendants have
breached a duty or provision of the agreement by attaching the
agreement to their motion. The Court finds no basis for holding
the lack of a mutual confidentiality agreement is an essential
term rendering the settlement unenforceable.

In this case, there was a settlement offer, acceptance of
that offer, and the terms are sufficiently definite. Therefore,
because Mr. Brady had actual authority to settle the case on the
terms he did, and because no essential terms are missing from the
agreement, the Court will grant Defendants' motion to enforce
settlement.

### iv. Rules of Professional Conduct § 1.8(g)

Plaintiff dedicates two sentences in her opposition brief to
the argument that the settlement is unenforceable because it
violates Rule 1.8(g) of the Rules of Professional Conduct
("RPC"). Plaintiff raises this issue in the context of arguing
that the settlement agreement is unenforceable because it does
not specify how the $3,000 aggregate settlement money would be
allocated among Plaintiffs. As previously discussed, this
contention does not reflect the reality that Lasky never sought

19

any monetary damages from Plaintiff. The Court sees no record
evidence that demonstrates Mr. Brady even considered offering
Lasky money from the settlement until after the motion to vacate
had been filed, in order to avoid further litigation. That e-mail
from Mr. Brady to Mr. Hildebrand is not clear and convincing
evidence that the settlement must be set aside.

Still, the ethical duties imposed by RPC 1.8(g) bear further
discussion. RPC 1.8(g) states:

> A lawyer who represents two or more clients shall not
> participate in making an aggregate settlement of the
> claims of or against the clients . . . unless each
> client gives informed consent after a consultation that
> shall include disclosure of the existence and nature of
> all the claims or pleas involved and of the
> participation of each person in the settlement.

RPC 1.8(g). The Supreme Court of New Jersey has held that

> RPC 1.8(g) imposes two requirements on lawyers
> representing multiple clients. The first is that the
> terms of the settlement must be disclosed to each
> client. The second is that after the terms of the
> settlement are known, each client must agree to the
> settlement.

Tax Authority, Inc. v. Jackson Hewitt, Inc., 898 A.2d 512, 522
(N.J. 2006).

The American Bar Association provides more guidance on RPC
1.8(g).[6] In a Formal Opinion in 2006, the Committee on Ethics and

---

[6] Rule 1.8(g) of the Model Rules of Professional Conduct
differs from the rule adopted in New Jersey only in that the
Model Rule 1.8(g) requires informed consent to be in writing.
Here, Plaintiff even e-mailed Mr. Brady approval of the
settlement as described in his February 28 letter.

Professional Responsibility emphasized that the rule serves to prevent "[u]nique and difficult conflicts" from arising among jointly represented plaintiffs. ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 06-438 (2006). The Committee stated that RPC 1.8(g) "deters lawyers from favoring one client over another in settlement . . . ." [Id.] The Committee stated that, among other things, RPC 1.8(g) requires lawyers to disclose the total amount of aggregate settlement and details of every other client's participation in the agreement. [Id.] By way of illustration, the Committee stated that, "[f]or example, if one client is favored over the other(s) by receiving non-monetary remuneration, that fact must be disclosed to the other client(s)." [Id.]

This is not a case where the jointly-represented Plaintiffs were in potential conflict. Abbott sought money damages because she was refused service at the pizzeria due to the presence of her service dog; Lasky sought injunctive relief that would enable him, in a wheelchair, to access the pizzeria and enjoy its facilities. The Court notes that Lasky's injunctive relief was not personal to Lasky in the sense that removal of barriers to access, such as prompt snow removal or adding a second door handle in the restroom, may be enjoyed by all patrons. Abbott stands to benefit from these improvements as well, albeit in less essential ways than Lasky. To put it another way, no one received

21

any relief in this joint settlement agreement that has been
denied to Abbott; she may enjoy the entirety of the fruits of the
settlement. Therefore, Mr. Brady did not favor Lasky by
negotiating injunctive relief for him. The removal of access
barriers neither disadvantages Abbott, nor diminishes her
settlement, nor affects her in any way. More importantly, this is
not a case in which Abbott and Lasky seek to divide a lump sum
settlement. To be sure, if that were the case, plaintiffs'
counsel would be required under RPC 1.8(g) to explain each
plaintiff's share of the settlement to both of his clients.

Here, Mr. Brady met both of the requirements of RPC 1.8(g)
described in Tax Authority, Inc..[7] First, Mr. Brady disclosed the
terms of the settlement to Abbott. Plaintiff understood from
Brady's letter that she was to receive $1,500. Brady's
certification also indicates that Abbott was "aware that Mr.
Lasky would not be seeking damages" and that he sought "to make
the facility accessible." [Brady Certification ¶¶ 7, 11.] Thus,
Abbott was aware of the terms and the participation of each
Plaintiff in the joint settlement.

Second, Plaintiff manifested agreement to the settlement in
her e-mail dated March 5. She congratulated Mr. Brady, indicated
she was pleased to add money to her bank account, and asked

---

[7] Plaintiff Lasky does not challenge the validity of the
settlement, so it may be safely presumed that he was informed of
the terms and agreed to the settlement.

whether she needed to sign any papers to finalize the deal. She did not hint at any dissatisfaction and raised no questions about the size of her settlement or the lack of injunctive relief about which she now complains.

Cases in which settlements have been set aside under RPC 1.8(g) involve parties who were never informed of the terms of the settlement or never assented to the settlement at all. See Hayes v. Eagle-Picher Indus., Inc., 513 F.2d 892, 894-95 (10th Cir. 1975) (voiding a settlement when five of 18 plaintiffs never were given the opportunity to approve a settlement before finalizing the agreement); In re Hoffman, 883 So. 2d 425, 433-34 (La. 2004) (voiding a settlement when only two of six plaintiffs signed an affidavit authorizing the attorney to negotiate and settle the case); see also Tax Authority, Inc., 898 A.2d at 519-21 (discussing Hayes and In re Hoffman). Here, by contrast, Abbott manifested assent to the settlement in writing. Mr. Brady could have been more thorough in his letter to Abbott, but he communicated the relevant terms and did not violate RPC 1.8(g).

If Defendants sought to enforce a settlement on terms other than those Abbott approved, such as those along the lines suggested in Mr. Brady's e-mail to Mr. Hildebrand, Abbott would have a more persuasive claim that she never agreed to the new terms. But no one seeks to impose on Plaintiff a settlement to which she did not assent. When Abbott approved the settlement in

23

her March 5 e-mail, there was no confusion about its terms. Each of the three Defendants were to pay $1,000 of the $3,000 total settlement, and Abbott was to receive $1,500, while Brady's costs and greatly reduced attorney's fee comprised the other $1,500.

None of the Hildebrand documents contradict the finding that the 1.8(g) requirements have been met. Abbott's e-mails to Brady show that Abbott did not receive the face time or interaction with Mr. Brady that she would have liked. One e-mail states that Abbott never put in writing Mr. Brady's authority to settle. But these e-mails should not obfuscate the facts that Abbott met with Brady in person to discuss settlement terms, including the possibility of injunctive relief, on January 28, 2012, and Abbott later enthusiastically agreed to the settlement terms that Brady negotiated. None of the Hildebrand documents undermine the conclusion that, at the time Mr. Brady negotiated the settlement, he had actual authority to settle. Brady acted upon that authority to enter into the settlement and to dismiss Abbott's complaint against all Defendants.

Whatever grievance Abbott has with Brady is not grounds for setting aside the settlement, which was negotiated in good faith by counsel who had authority to bind their clients. It would be particularly unfair at this juncture to expose moving Defendants to further litigation costs, when the current conflict is essentially buyer's remorse masquerading as a dispute between a

client and her attorney. The Defendants, in settling this case, properly relied upon the actual authority of Mr. Brady to do so.

## IV. Conclusion

For the foregoing reasons, the Court finds that Mr. Brady had actual authority to settle the case in the manner he did, and no essential terms are missing from the agreement. Therefore, the Court will grant Defendant's motion to enforce settlement.[8] The accompanying Order will be entered.


__January 30, 2013__                    __s/ Jerome B. Simandle__
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge

---

[8] The mechanics of the settlement will require Plaintiff Abbott to sign the Confidential Settlement and General Release Agreement ("CSA") tendered to her by the Defendants. Upon her signing, Ms. Abbott is entitled to receive $1,500 in full settlement of all claims, and Mr. Brady is entitled to receive $1,500 in fees and costs. It appears that Mr. Brady presently holds $2,000 of the settlement proceeds previously tendered to him, in trust, and the remaining $1,000 shall be paid by Tacconelli to Mr. Hildebrand for disbursement to Ms. Abbott. When Mr. Hildebrand notifies Mr. Brady that Ms. Abbott has executed the CSA, Mr. Brady will tender $500 to Mr. Hildebrand for disbursement to Ms. Abbott, and Mr. Brady may retain the remaining $1,500 as his costs and fees, as per the settlement agreement.